DANIEL SMITH, AS ADMINISTRATOR, ETC., OF MARIA SMITH, DECEASED, RESPONDENT, *v.* ANDREW MEAGHAN AND OTHERS, APPELLANTS.

*Evidence — when a party cannot testify as to the appearance and acts of a deceased person — Code of Civil Procedure, sec. 829.*

This action was brought by one Maria Smith, one of the heirs-at-law of one Thomas Meaghan, to set aside a deed made by him to one Andrew Meaghan, upon the ground that its execution was procured through the fraud and improper conduct of the defendant Robert and his mother Elizabeth, who had caused the said Thomas to become intoxicated to such an extent as to render him incapable of understanding and comprehending the nature of his act.

Upon the trial the plaintiff's intestate, who was then living, was allowed, against the objection and exception of the defendants, to testify as to what the persons said, on coming into the room, just after the execution of the deed, and as to

the acts and appearance of the deceased grantor, her evidence tending to show that he was then intoxicated to an extent indicating stupidity.

*Held,* that the evidence was inadmissible, as in violation of the provisions of section 829 of the Code of Civil Procedure.

*Holcomb* v. *Holcomb* (95 N. Y., 316, 324) followed.

APPEAL by the defendants Robert Meaghan and Emeline, his wife, the former in his own behalf and also as administrator of the estate of Elizabeth Meaghan, deceased, from a judgment in favor of the plaintiff's intestate, Maria Smith, setting aside a deed made by Thomas Meaghan, deceased, and also three other instruments connected with such deed and dependent thereon, and also from an order denying a motion for a new trial made upon the minutes of the judge.

Since the action was commenced the original plaintiff, Maria Smith, and one of the defendants, Elizabeth Meaghan, have died, and the action has been revived and continued as to them in the names of their personal representatives.

The question litigated on the trial was whether the deed made by Thomas Meaghan to the defendant Andrew Meaghan was procured to be executed by the former through the fraud and improper conduct of the appellant Robert Meaghan, aided by his mother Elizabeth Meaghan. The defendants Andrew Meaghan and wife allowed the case to go against them by default. On the trial the question above stated was submitted to the jury, who found thereon in the affirmative. The jury found that the deed was obtained by fraud on the part of Robert Meaghan, aided by his mother Elizabeth Meaghan, by causing the intoxication of Thomas to an extent that rendered him incapable of understanding and comprehending the nature and effect of his act. This conclusion was accepted and adopted by the learned judge who conducted the trial, and judgment was awarded in favor of the plaintiff accordingly.

*J. H. Clute*, for the appellants.

*R. A. Parmenter*, for the respondent.

BOCKES, J. :

The case stands, as regards every question raised on this appeal, the same as if there had been no change of parties since the

commencement of the suit by Maria Smith, one of the heirs-at-law (a daughter) of Thomas Meaghan, who died intestate.

The difficulty which presents itself on this appeal grows out of the ruling of the learned judge before whom the case was tried on a question of evidence. The leading, and indeed controlling, subject litigated was whether the grantor, Thomas Meaghan, was intoxicated at the time he executed the deed to such an extent as to render him incapable of understanding the nature and effect of his act. Evidence was given tending to show that such was his condition; and to corroborate, emphasize and intensify the proof in that regard, the plaintiff Maria Smith, who claimed through and under him, as heir-at-law, and in hostility to the deed, was allowed to give her own testimony descriptive of his then condition, and tending to show him to have been intoxicated as charged in her complaint. The objection was taken to this evidence as in violation of section 829 of the Code of Civil Procedure. Her testimony, so allowed against objection, was to the effect that she came into the room at the time her father executed the deed, or immediately thereafter, and while yet Mr. Stickles, who drew the instrument and as notary public took the acknowledgment of its execution, was present; that her father was sitting in a rocking chair with his head down on his hands, and his hands resting on his cane; that when Mr. Stickles, on leaving the house, bade him good-bye he neither raised his head or made answer; that his stupidity was a subject of remark; that when he raised his head she smelled a strong smell of liquor from his breath; that when spoken to by her husband he raised his head but she heard no answer; that he did not come to the table at dinner but remained in the same position, his head on his hands and his hands on his cane; also further described his appearance later in the afternoon. As above stated this evidence was given to prove, and to strengthen other proof given to show, that he was intoxicated to an extent indicating stupidity. This evidence was, as we think, incompetent according to the decision in *Holcomb* v. *Holcomb* (95 N. Y., 316, 324, and following pages), and also in *Campbell* v. *Hubbard* (23 W. D., 3). As was said in the last case cited, the evidence was material, and tended, with other and similar evidence from other sources, to establish the plaintiff's claim. In *Holcomb* v. *Holcomb*, Judge DANFORTH says that "the words of

exclusion" (in § 829 cited) "are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one person can derive *impressions or information from the conduct,* condition or language of another;" and the learned judge adds: "The statute is a beneficial one and ought not to be limited or narrowed by construction." An examination of the evidence, held to be inadmissible in *Holcomb* v. *Holcomb,* will show its similitude to that objected to, but allowed, in this case; and it may be added that the case cited was like this in hand, in its principal attributes, it being a suit in equity to set aside an instrument because of incompetency and undue influence.

It is suggested that the evidence above considered, or much of it, was admitted only in a qualified sense, and with limited application; that, as the court remarked, it was admitted "merely as descriptive of the persons in the room at the time and for no other reason, admitted as merely descriptive of the persons who were there on that occasion." But this does not meet the point of its inadmissibility. It was inadmissible because descriptive of the condition of the deceased grantor, the real matter in issue, and how it was "*descriptive*" of any person present, except the deceased grantor is not apparent. As to him, according to the decisions cited, such description was inadmissible as evidence coming from the plaintiff. The qualification and limitation as declared was without any real ground of support, and left the proof influential almost as a matter of necessity, and that too quite possibly to an extent absolutely controlling in the result. And, again, the evidence was recognized and given significance as bearing directly on the main issue, the condition of the deceased, in and by the charge to the jury. The learned judge said: "When you have traveled and waded through the evidence, it all comes back to that simple transaction, when Mr. Stickles drew this deed and when * * * this deed was executed, * * * and when you come there the simple inquiry * * * is this: Was Thomas Meaghan at the time * * * so intoxicated, so bereft of his judgment and his reason, through the influence of liquor, procured by Robert and administered by the mother, as to be unable to comprehend

the act which he did in executing that deed? *Upon that question* you had the witnesses, Mr. Smith *and his wife* * * * to satisfy you that the old gentleman was thus intoxicated—thus bereft of his reason—thus deprived of his understanding." Thus it seems to have been considered, and so the jury were instructed that the evidence of the plaintiff Mrs. Smith was to be accepted and regarded as significant in its bearing upon the main issue, and that, too, without qualification or limitation in its use; and, indeed, we can readily see that with the jury it could hardly have been otherwise than so influential, and possibly may have been controlling of the verdict. True, there was other very influential evidence in support of the plaintiff's case, possibly sufficient to support it, but in view of the conflict of proof which the case presents, and of the fact that the verdict and finding of the court were given under the possible and probable influence of inadmissible evidence, and that without it the merits may well be held reasonably in dispute, its admission cannot be overlooked, notwithstanding the case is in equity where errors in the admission of evidence may in some instances be held innoxious. Some other errors in rulings upon questions of evidence are urged, but the conclusion above reached renders their examination unnecessary. We are of the opinion that there must be a new trial.

Judgment reversed, new trial granted, costs to abide the event.

LEARNED, P. J., and LANDON, J., concurred.

Judgment reversed, new trial granted, costs to abide event.